UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - X

**ECF CASE**

BENJAMIN KLEIN and ATLAS                    :
TELECOMMUNICATIONS OF ROCKLAND COUNTY,
INC., a New York Corporation,               :

                                            05 Civ. 3615 (WCC)

                    Plaintiffs,             :


        - against -                         :        **OPINION**
                                                     <u>**AND ORDER**</u>

VISION LAB TELECOMMUNICATIONS, INC., a      :
Florida Corporation,
                                            :
                    Defendant.
                                            :
- - - - - - - - - - - - - - - - - - - X

**A P P E A R A N C E S :**

                            BELLIN & ASSOCIATES, LLC
                            **Attorneys for Plaintiffs**
                            60 East 42nd Street, Suite 1026
                            New York, NY 10165

AYTAN Y. BELLIN, ESQ.

        Of Counsel


                            STORCH AMINI & MUNVES, P.C.
                            **Attorneys for Defendant**
                            Two Grand Central Tower, 25th Fl.
                            140 East 45th Street
                            New York, NY 10017

RUSSELL D. MUNVES, ESQ.

        Of Counsel


                            WILDMAN, HARROLD, ALLEN & DIXON
                              LLP
                            **Of Counsel to Attorneys for
                              Defendant**
                            225 West Wacker Drive, Suite 3000
                            Chicago, IL 60606

R. JOHN STREET, ESQ.
SAMUEL S. COHEN, ESQ.

        Of Counsel

**CONNER, Senior D.J.:**

On March 14, 2005, plaintiffs Benjamin Klein and Atlas Telecommunications of Rockland County, Inc. ("Atlas") (collectively, "plaintiffs") brought a state court action against defendant Vision Lab Telecommunications, Inc. ("Vision Lab") alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b), ("TCPA" or the "Act") and its state counterpart, section 396-aa of the New York General Business Law. Vision Lab removed the case pursuant to 28 U.S.C. §§ 1441 and 1446, asserting removal was proper under the diversity jurisdiction statute, 28 U.S.C. § 1332. Plaintiffs move to remand arguing that this Court lacks subject matter jurisdiction because the TCPA grants state courts exclusive jurisdiction over private causes of action brought under 47 U.S.C. § 227(b). In their reply memorandum, plaintiffs requested alternative relief in the form of a certification for interlocutory appeal if this Court denies remand.

Shortly thereafter, defendant filed a motion to dismiss certain of plaintiffs' claims under FED. R. CIV. P. 12(b)(6) because: (1) plaintiffs' damages claims alleging violations of 47 C.F.R. § 68.318(d), a Federal Communications Commission ("F.C.C.") regulation governing facsimile sender identification, do not present an actionable claim under the TCPA; (2) plaintiffs' claims arising from interstate facsimile transmissions under the New York State statute are preempted by the TCPA; and (3) plaintiffs' prayer for attorney's fees is not authorized by either the federal or state statutes at issue in this case.

For the reasons stated below, plaintiffs' motion to remand is denied and defendant's motion to dismiss certain of plaintiffs' claims is granted. In addition, plaintiffs' request for certification for interlocutory appeal is granted. Accordingly, the action is stayed pending the decision of the Court of Appeals for the Second Circuit.

## BACKGROUND

Klein, a resident of the State of New York, serves as C.E.O. of Atlas, a New York corporation with its principal place of business in Monsey, New York. (V. Complt. ¶¶ 1-2.) Vision Lab is a Florida corporation with its principal place of business in Miami Beach, Florida. (*Id.* ¶ 3.)

Plaintiffs allege that from May 2004 to February 2005, Vision Lab faxed in excess of 150 unsolicited advertisements to three telephone numbers registered to plaintiffs and linked to fax machines. Specifically, plaintiffs allege that Vision Lab faxed Klein seventy unsolicited advertisements, including twelve unsolicited advertisements for travel services and/or vacations; seventeen unsolicited advertisements for mortgages and/or mortgage services; forty unsolicited advertisements for stocks and/or stock investments; and one unsolicited advertisement for notary public training seminars. (*Id.* ¶¶ 6-9.) In addition, plaintiffs allege that Vision Lab faxed Atlas ninety-five unsolicited advertisements, including eleven unsolicited advertisements for travel services and/or vacations; ten unsolicited advertisements for mortgages and/or mortgage services; seventy-one unsolicited advertisements for stocks and/or stock investments; and three unsolicited advertisements for notary public training seminars. (*Id.* ¶¶ 14-16, 21-24.) Plaintiffs state that all these faxes were "wholly unsolicited" and were sent without the consent of either Klein or Atlas. (*Id.* ¶¶ 10, 17, 25.) Plaintiffs add that Vision Lab, a "facsimile broadcaster," "has willfully arranged for and caused hundreds of thousands of similar unsolicited faxes to be sent to fax machines all over the United States without the consent" of the recipients. (*Id.* ¶¶ 11, 13, 18, 20, 26, 28.)

Plaintiffs commenced this action against Vision Lab in New York Supreme Court by causing it to be served with a Verified Complaint on March 14, 2005. In the Complaint, plaintiffs allege

Vision Lab committed 658 violations[1] of § 227(b) of the TCPA, which makes it unlawful to use any fax machine, computer, or other device to send unsolicited advertisements to a fax machine. This included 493 alleged violations of 47 C.F.R. § 68.318(d), an F.C.C. regulation dictating that fax transmissions bear certain sender identification information, which plaintiffs assert was prescribed under, and therefore actionable under, 47 U.S.C. § 227(b). Specifically, plaintiffs claim that all but two of the 165 faxes[2] caused three individual violations of § 68.318(d) by failing to: (1) with one exception, identify the business, other entity or individual that sent the faxes; (2) with one exception, clearly indicate the telephone number of the sending machine; and (3) clearly indicate the name of the fax broadcaster under which the fax broadcaster was registered to conduct business. (*Id.* ¶¶ 12, 19, 27.) Based on the statutory amount of $500 per violation, plaintiffs claim total statutory damages of $329,000, or $139,500 for violations against Klein and $189,500 for violations against Atlas. (*Id.* ¶¶ 39, 47.) Plaintiffs increase this total to $987,000 to reflect treble damages available under 47 U.S.C. § 227(b)(3) for defendant's alleged willful and knowing violations. (*Id.* ¶¶ 40, 48.)

Plaintiffs also allege violations of N.Y. GEN. BUS. LAW § 396-aa, which makes it unlawful to transmit advertisements by fax. Because § 396-aa exempts transmissions of five pages or less sent between the hours of 9:00 p.m. and 6:00 a.m., (*see* N.Y. GEN. BUS. LAW. § 396-aa(1)), plaintiffs claim only 119 violations of this statute—fifty-seven violations against Klein and sixty-two against Atlas. (V. Complt. ¶¶ 42, 50.) Plaintiffs seek statutory damages in the amount of $5,700 for Klein and $6,200 for Atlas, for a total of $11,900, based on the statutory amount of $100 per violation.

---

[1] This comprised 279 violations against Klein and 379 violations against Atlas. (V. Complt. ¶¶ 38, 46.)

[2] This Court calculated defendant sent 165 faxes; however, paragraph 6 of the Affidavit of Aytan Y. Bellin in support of plaintiffs' motion to remand indicates defendant sent 166 faxes.

(*Id.* ¶¶ 44, 52.) In addition, plaintiffs seek attorney's fees and costs.


# DISCUSSION

## I.    Plaintiffs' Motion to Remand

A defendant may remove a cause of action initially filed in state court provided the action is one "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). It is well settled that removal statutes are to be strictly construed against removal, with all doubts resolved in favor of remand, as removal jurisdiction undercuts federalism and abridges the deference courts generally give to a plaintiff's choice of forum. *See id.*; *see also In re NASDAQ Mkt. Makers Antitrust Litig.*, 929 F. Supp. 174, 178 (S.D.N.Y. 1996) ("Removal jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns."); *Leslie v. BancTec Serv. Corp.*, 928 F. Supp. 341, 347 (S.D.N.Y. 1996). "When a party removes a state court action to the federal court on the basis of diversity of citizenship, and the party seeking remand challenges the jurisdictional predicate for removal, the burden falls squarely upon the removing party to establish its right to a federal forum by competent proof." *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979); *see also Caterpillar v. Williams*, 482 U.S. 386, 391-92 (1987).

Defendant removed the present action pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332, asserting complete diversity of citizenship of the parties and an amount in controversy in excess of $75,000. (*See* Notice of Removal at 1-4.) Plaintiffs rightly do not contest that the diversity jurisdiction statute's requirements are met. The requisite amount in controversy was properly pled, and the parties are of completely diverse citizenship: plaintiffs are a resident of New York and a

New York corporation with its principal place of business in New York, and defendant is a Florida corporation with its principal place of business in Florida. Rather, plaintiffs contend that removal of this action was improper because the TCPA granted state courts exclusive jurisdiction over private causes of action brought under 47 U.S.C. § 227(b)(3).

The TCPA prohibits the "use [of] any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). Recipients of unsolicited fax advertisements may bring a private right of action under § 227(b)(3) of the TCPA, which provides:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring an action in an appropriate court of that State —
>> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>> (C) both such actions.
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

Plaintiffs rely extensively on the Second Circuit's decision in *Foxhall Realty Law Offices, Inc. v. Telecomms. Premium Servs. Ltd.*, 156 F.3d 432 (2d Cir. 1998), to support their position that § 227(b)(3) grants state courts exclusive jurisdiction over claims under the Act to the complete exclusion of the federal courts. In *Foxhall*, the Second Circuit stated that "the text of the TCPA indicates that Congress intended to assign private rights of action exclusively to courts other than the federal district courts." 156 F.3d at 436. The Second Circuit observed that two other circuit courts and one district court also ruled that § 227(b)(3) explicitly provided for exclusive state court jurisdiction. *See id.* at 434-35 (citing *Nicholson v. Hooters of Augusta, Inc.*, 136 F.3d 1287, 1289

5

(11th Cir. 1998), *modified* 140 F.3d 898 (11th Cir. 1998); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 509 (5th Cir. 1997); *Murphey v. Lanier*, 997 F. Supp. 1348 (S.D. Cal. 1998)).

However, as plaintiffs themselves recognize, the decision in *Foxhall* addressed removal under general federal question jurisdiction pursuant to 28 U.S.C. § 1331, and not the general grant of diversity jurisdiction under 28 U.S.C. § 1332. While plaintiffs argue that this distinction "is of no consequence," (Pls. Mem. Supp. Mot. Remand at 6), this Court cannot agree. We recognize that numerous Courts of Appeal have addressed—and unanimously rejected—removal of § 227(b)(3) claims based on federal question jurisdiction. *See Murphy v. Lanier*, 204 F.3d 911, 914 (9th Cir. 2000); *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 516-17 (3d Cir. 1998); *Foxhall*, 156 F.3d at 435-38 (2d Cir. 1998); *Nicholson*, 136 F.3d at 1287-88 (11th Cir. 1998); *Chair King*, 131 F.3d at 509 (5th Cir. 1997); *Int'l Sci. & Tech. Inst., Inc. v. Inacom Commc'ns, Inc.*, 106 F.3d 1146, 1150 (4th Cir. 1997). However, only the Court of Appeals for the Seventh Circuit has addressed whether diversity jurisdiction under § 1332 may provide a basis for hearing TCPA claims in federal court; the Court of Appeals found that it did, in part because that case involved the Class Action Fairness Act and whether that Act allowed for removal in the context of the TCPA. *See Brill v. Countrywide Home Loans, Inc.*, No. 05-8024, 2005 WL 2665602, at *6 (7th Cir. Oct. 20, 2005). This Court is not persuaded that the reasoning of the Courts of Appeal cases analyzing federal question jurisdiction extends to removal based on diversity. *See Accounting Outsourcing, LLC v. Verizon Wireless Personal Commc'ns, LP*, 294 F. Supp. 2d 834, 839-40 (M.D. La. 2003) ("Nothing in the reasoning of any of the courts' opinions, however, suggests it would be logical to extend that reasoning to eliminate diversity jurisdiction.").

As Chief Judge Korman of the Eastern District of New York noted in a recent unpublished

decision involving defendant Vision Lab and an identically grounded motion to remand, "an apparent consensus is emerging on this subject among those district courts which have addressed the applicability of § 1332 to TCPA claims." *Saporito v. Vision Lab Telecomms., Inc.*, No. 05-CV-1007, slip op. at 6 (E.D.N.Y. May 10, 2005) ("*Saporito I*"). Indeed, no less than five other district courts came to the same conclusion as Chief Judge Korman: diversity jurisdiction provides a basis for hearing TCPA claims in federal court. *See Accounting Outsourcing*, 294 F. Supp. 2d at 840 (concluding "that Congress did not intend to preclude federal diversity jurisdiction pursuant to § 1332 for claims brought under the TCPA"); *Kopff v. World Research Group, LLC*, 298 F. Supp. 2d 50, 55 (D.D.C. 2003) ("Removal of TCPA claims on the basis of diversity . . . is permissible."); *Kinder v. Citibank*, No. 99-CV-2500 W, 2000 WL 1409762, at *3 (S.D. Cal. Sept. 14, 2000) ("Nothing in the Ninth Circuit's analysis [of *Murphy v. Lanier*] suggests that the TCPA precludes district courts from hearing private TCPA claims where some other independent basis for federal jurisdiction exists, such as diversity of citizenship or supplemental jurisdiction." (emphasis in original)); *see also Gold Seal Termite & Pest Control Co. v. DirecTV, Inc.*, No. 03-CV-00367-LAM.-WTL, 2003 WL 21508177, at *4 (S.D. Ind. June 10, 2003) (concluding removal would be proper under diversity jurisdiction, but finding amount in controversy not met); *Biggerstaff v. Voice Power Telecomms.*, 221 F. Supp. 2d 652 (D.S.C. 2002) (noting that "it is not evident that Congress wanted [TCPA] claims to be brought in state court even if they exceeded $75,000 and involved diverse parties," but finding diversity jurisdiction inapplicable due to failure to satisfy amount in controversy requirement).

Plaintiffs would have this Court ignore these well-reasoned opinions. First, plaintiffs argue that § 1332 is no "less a general jurisdictional statute than § 1331," implying that if Congress's

statements regarding exclusive jurisdiction were enough to defeat jurisdiction under § 1331, that language also must be sufficient to defeat jurisdiction under § 1332. (Pls. Mem. Supp. Mot. Remand at 8; Pls. Reply Mem. Supp. Mot. Remand at 3-4.) This argument ignores the fact that "[r]ather than granting jurisdiction on the basis of federal law, § 1332 is an independent grant of jurisdiction designed to prevent discrimination against out-of-state defendants regardless of whether federal law is involved." *See Biggerstaff*, 221 F. Supp. 2d at 656 (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 74 (1938)). As the District Court for the District of Columbia reiterated:

> The diversity jurisdiction statute is not a general jurisdictional grant nor is it akin to Section 1331 providing for the federal question jurisdiction. Rather, diversity jurisdiction, expressly contemplated by Article III of the United States Constitution, is an independent basis for federal jurisdiction created to prevent discrimination against non-resident defendants regardless of whether federal law is involved.

*Kopff*, 298 F. Supp. 2d at 55 (citing *Erie*, 304 U.S. at 74). Accordingly, plaintiffs' attempt at dissolving the distinction between federal question jurisdiction and diversity jurisdiction is unpersuasive.

So is plaintiffs' second line of argument, which asserts that Congress clearly indicated through the TAPA's statutory language that state courts have exclusive jurisdiction over private causes of action. (Pls. Mem. Supp. Mot. Remand at 9 (citing *Foxhall*, 156 F.3d at 432); Pls. Reply Mem. Supp. Mot. Remand at 4-5 (citing *Gottlieb v. Carnival Corp.*, 367 F. Supp. 2d 301, 309 (E.D.N.Y. 2005)).) However, no express rejection of diversity jurisdiction can be found in the TCPA. *See Accounting Outsourcing*, 294 F. Supp. 2d at 838 (noting that "it would take a much more clear and definitive statement from Congress to convince this court to remove a party's entitlement to a federal forum based on diversity"); *see id.* (citing two statutory examples of an express rejection of diversity jurisdiction but commenting that "[a]lthough such statutes are not

unprecedented, they are indeed rare").  In addition, "[a] federal court's original jurisdiction in

diversity cases is not subject to implied exceptions."  *Kopff*, 298 F. Supp. 2d at 55.

Also, this Court finds persuasive—as have other federal district courts—the analysis in

*Kinder*, which reasoned that

> in those actions where diversity of citizenship properly exists, Plaintiff's
> interpretation of the TCPA would create the anomalous result that state law claims
> based on unlawful telephone calls could be brought in federal court, while federal
> TCPA claims based on those same calls could be heard only in state court.  Such
> an interpretation would also undermine the purposes of supplemental jurisdiction
> by requiring parties who bring TCPA claims along with other federal claims to
> maintain separate, parallel actions in state and federal court.

2002 WL 1409762, at *4.  "This argument alone is reason enough to allow TCPA claims to be

litigated in federal courts based on diversity jurisdiction, one court concluded, since 'if the exact

same claims, brought pursuant to state law, may be litigated in federal court on diversity of the

parties, it makes little sense to preclude a TCPA claim.'"  *Saporito I*, slip op. at 8 (quoting

*Accounting Outsourcing*, 294 F. Supp. 2d at 837-38).

This interpretation is consistent with the purposes of the TCPA, as reflected in the Act's

legislative history.  *See Accounting Outsourcing*, 294 F. Supp. 2d at 837 ("One of the main reasons

the TCPA was interpreted by the circuit courts to exclude federal question jurisdiction was because

state courts provide a more appropriate forum for small value claims and plaintiffs appearing on their

own behalf." (citing *Inacom*, 106 F.3d at 1152-53 (in turn citing the congressional record and the

statements of Senator Hollings))).  Plaintiffs quote the statement of Senator Hollings that "[t]he bill

does not, because of constitutional restraints, dictate to the states which court in each state shall be

the proper venue for such action" in support of the proposition that state courts of general

jurisdiction with no monetary limitations have jurisdiction over such actions.  (Pls. Mem. Supp. Mot.

Remand at 10-11 (citing statements of Senator Hollings).) However, plaintiffs themselves qualify this statement: "Senator Hollings only mentioned his hope that states would allow such actions to be brought in small claims court because he wished that consumers who had a limited number of claims would be able to bring these claims under the TCPA in the most user friendly forum possible." (*Id.* at 11.) Accordingly, these statements in no way negate the reason behind diversity jurisdiction: preventing discrimination against out-of-state defendants. *See Kopff*, 298 F. Supp. 2d at 55 (citing *Erie*, 304 U.S. at 74); *see also Biggerstaff*, 221 F. Supp. 2d at 656 (citing *Erie*, 304 U.S. at 64).

Plaintiffs' arguments are not bolstered by their reliance on two recent federal district court decisions—*Gottlieb v. Carnival Corp.*, 367 F. Supp. 2d 301, and *Consumer Crusade, Inc. v. Fairon & Assocs., Inc.*, No. 05-CV-00853-PSF-MJW, 2005 WL 1793447 (D. Colo. July 28, 2005)—finding that diversity jurisdiction cannot operate to grant federal courts jurisdiction over TCPA claims. Both cases take a fundamentally different tack on interpreting the "exclusive jurisdiction" language, one with which this Court, respectfully, disagrees. In *Consumer Crusade*, the court observes that because the TCPA grants exclusive jurisdiction to the states, a TCPA claim cannot originally be brought in federal court; therefore, § 1332 cannot provide a basis for original jurisdiction in federal court. 2005 WL 1793447, at *4-5. The court justifies its position by relying heavily on *Gottlieb*. *See id.* In *Gottlieb*, the court stated:

> When, in *Foxhall*, the Court held that state courts have *exclusive jurisdiction* over a cause of action created by the TCPA . . . it must be assumed that it used its words carefully and advisedly. Being conscious of the admonition against making a fortress out of the dictionary, the word "exclusively" requires no definition. To conclude that when courts of appeal used the word "exclusively" to mean it does not apply to diversity jurisdiction is to conclude that "exclusively" means "exclusively" except when it does not and would be reminiscent of the colloquy between Humpty Dumpty and Alice:

> "when I use a word," Humpty Dumpty said, . . . "it means just what
> I choose it to mean—neither more nor less." "The question is," said
> Alice, "whether you *can* make words mean so many different things."

Lewis Carroll, *Through the Looking Glass*, Ch. VI.

*Gottlieb*, 367 F. Supp. 2d at 309.

However, this Court agrees with Chief Judge Korman's assessment of *Gottlieb* and its

reliance on *Foxhall*:

> "If the language [on exclusive jurisdiction] is taken out of context, it certainly . . .
> would seem to indicate that federal courts could never hear claims under the TCPA."
> But plainly, the meaning of the word "exclusive" as used in *Foxhall* can only be
> ascertained by reading the term in context. Simply put, because diversity jurisdiction
> was not raised in *Foxhall*, the use of the word "exclusive" in that case must be
> understood to mean that, as between state and federal courts, state courts have
> exclusive jurisdiction.

*Saporito v. Vision Lab Telecomms., Inc.*, No. 05-CV-1007, slip op. at 4-5 (E.D.N.Y. July 8, 2005)

("*Saporito II*") (quoting *Saporito I*, slip op. at 4 (citation omitted)). *Foxhall* did not address diversity

jurisdiction, nor did the opinion indicate whether the requirements for diversity were met. While

in *Gottlieb* Judge Glasser concedes that *Foxhall* did not discuss diversity, he observed that the parties

were diverse. However, *Foxhall* is silent regarding the amount in controversy. *Consumer Crusade*

incorrectly states, based on Judge Glasser's opinion, that *Foxhall* "involved a diversity fact pattern."

2005 WL 1793447, at *5. Even if it did, the Second Circuit's opinion did not address diversity or

its effects on the decision to remand for lack of federal question jurisdiction. Where the

requirements of § 1332 are met, this Court sees no reason to interpret the TCPA to preclude the

jurisdiction of the federal courts. *See Kopff*, 298 F. Supp. 2d at 55 (citing *Erie*, 304 U.S. at 74); *see

also Biggerstaff*, 221 F. Supp. 2d at 656 (citing *Erie*, 304 U.S. at 64). "Moreover, it is clear that

Congress recognized the advantages of litigating such large TCPA cases in federal court, since

Congress determined that the litigation of TCPA cases brought by state attorneys general or the F.C.C. should take place exclusively in the federal courts." *Saporito II*, slip op. at 5 (citing 47 U.S.C. § 227(f)(2)).

Accordingly, plaintiffs' motion to remand is denied.

## II.    Plaintiffs' Request for Interlocutory Appeal

A federal district court may permit an interlocutory appeal if it finds that: (1) the order "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and that (3) "appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The trial judge has substantial discretion in deciding whether or not to certify, *see D'Ippolito v. Cities Serv. Co.*, 374 F.2d 643, 649 (2d Cir. 1967), and the court should construe the requirements for certification strictly. *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990). Indeed, certification is warranted only where exceptional circumstances exist. *See id.* at 24-25; *see also Abortion Rights Mobilization, Inc. v. Regan*, 552 F. Supp. 364, 366 (S.D.N.Y. 1982). As courts have noted:

> [L]eave to appeal from interlocutory orders should be granted only in "exceptional circumstances" because to do otherwise would "contravene the well-established judicial policy of discouraging interlocutory appeals and avoiding delay and disruption which results from such piecemeal litigation."

*In re Ionosphere Clubs Inc.*, 179 B.R. 24, 28 (S.D.N.Y. 1995) (quoting *Escondido Mission Vill. v. Best Prods. Co., Inc.*, 137 B.R. 114, 116 (S.D.N.Y. 1992)).

We agree with plaintiffs that the jurisdictional issue in this case is controlling. *See Klinghoffer*, 921 F.2d at 24 (stating "it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action," using subject matter jurisdiction as an

example).

"An immediate appeal is considered to advance the ultimate termination of the litigation if that 'appeal promises to advance the time for trial or to shorten the time required for trial.'" *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 53 (S.D.N.Y. 1998) (quoting 16 CHARLES A. WRIGHT & ARTHUR MILLER, *Federal Practice and Procedure* § 3930 p. 432 (2d ed. 1996)). Chief Judge Korman accurately summarized the issues presented under this factor:

> [I]f the Second Circuit determined, as did Judge Glasser, that diversity jurisdiction cannot provide a basis for hearing TCPA claims in federal court, this case would have to be promptly remanded to state court, terminating the litigation in federal court. . . . On the other hand, if the Second Circuit were to affirm . . . and hold that diversity jurisdiction provides a proper basis to hear TCPA claims in federal court, an interlocutory appeal would not advance the termination of this litigation, since after the appeal the case would simply resume in district court.

*Saporito II*, slip op. at 8. Although an interlocutory appeal could delay resolution of this process, it could prevent an even greater delay and much wasted expense. Proceeding with the case where the possibility exists that this Court lacks jurisdiction could force plaintiffs to try this case twice, once in federal court and again in state court. Such a scenario violates the spirit of the TCPA. Consequently, we are inclined to weigh this factor in favor of granting the interlocutory appeal.

However, "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996). Plaintiffs argue forcefully that the fact that two distinguished judges in our sister Eastern District—Chief Judge Korman and Judge Glasser—have reached opposite conclusions on the issue of diversity jurisdiction of TCPA claims clearly establishes that there is a substantial ground for difference of opinion on the issue. (Pls. Reply Mem. Supp. Mot. Remand at 10.) We agree. Indeed, we note that Chief Judge Korman certified his ruling in *Saporito*

*II* for interlocutory appeal.  However, for reasons we do not know, the plaintiff did not pursue such an appeal.  *See Saporito v. Vision Lab Telecomms., Inc.*, No. 05-CV-1007, slip op. at 2 (E.D.N.Y. Sept. 28, 2005) ("*Saporito III*").

Accordingly, plaintiffs' request for certification is granted.  In the interest of judicial efficiency, the present proceeding is stayed, aside from discovery, while this Court awaits a definitive ruling on the jurisdictional question from the Second Circuit.  Even if that ruling results in a remand of this action to state court, the discovery accomplished in the meantime will be equally useful in that forum.

III.    **Defendant's Motion to Dismiss**

As the parties have fully briefed the issues presented by defendant's motion to dismiss, and because the decision on those issues will affect the scope of discovery, this Court presently will rule on defendant's motion.

On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the issue is "whether the claimant is entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).  A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir. 1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10 (1980)).  Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed. 1997); *see also Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1088 (2d Cir.

1995).  Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which plaintiff describes, are insufficient as a matter of law.  *See Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).  On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all of the well-pleaded facts and consider those facts in the light most favorable to the plaintiff.  *See Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993); *In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 583 (S.D.N.Y. 1993) (Conner, J.).

Defendant asserts that plaintiffs' claims should be dismissed because (1) violations of 47 C.F.R. § 68.318(d) are not actionable under the TCPA, (2) the TCPA preempts plaintiffs' state law claims, which all relate to interstate facsimile transmissions, and (3) plaintiffs' request for attorney's fees is not authorized by either the federal or state statutes at issue in this case.

### A.  Violations of 47 C.F.R. § 68.318(d)

Defendant argues that plaintiffs cannot bring individual causes of action under § 227(b) for violations of regulation § 68.318(d).  Plaintiffs' Complaint charges defendant with three violations of that regulation per fax for failing in its faxes to: (1) with one exception, identify the business, other entity, or individual that sent the faxes; (2) with one exception, clearly indicate the telephone number of the sending machine; and (3) clearly indicate the name of the fax broadcaster under which the fax broadcaster was registered to conduct business.  (V. Complt. ¶¶ 12, 19, 27, 38, 46.) Defendant asserts that the regulations at issue were not promulgated pursuant to § 227(b), but rather § 227(d)(1)(B), governing technical and procedural standards, and that no cause of action for such violations exists under § 227(b) because such violations are reserved for prosecution by the F.C.C. or state attorneys general.  (Def. Mem. Supp. Mot. Dismiss at 6-8; Def. Reply Mem. Supp. Mot.

Dismiss at 3, 5.) Plaintiffs contend that their claims for § 68.318(d) violations are actionable under § 227(b) in order to enable recipients of unsolicited fax advertisements to identify the sending party so that a lawsuit can be filed against the proper offending sender. (Pls. Mem. Opp. Mot. Dismiss at 1, 9.)

Section 227(d)(1)(B) states:

It shall be unlawful for any person within the United States —

(B) to use a computer or other electronic device to send any message via a telephone facsimile machine unless such person clearly marks, in a margin at the top or bottom of each transmitted page of the message or on the first page of the transmission, the date and time it is sent and an identification of the business, other entity, or individual sending the message and the telephone number of the sending machine or of such business, other entity, or individual.

The regulation at issue, § 68.318(d), incorporates language identical to § 227(d) before adding language pertaining to fax broadcasters and fax machines:

Additional limitations.

(d) Telephone facsimile machines; Identification of the sender of the message. It shall be unlawful for any person within the United States to use a computer or other electronic device to send any message via a telephone facsimile machine unless such person clearly marks, in a margin at the top or bottom of each transmitted page of the message or on the first page of the transmission, the date and time it is sent and an identification of the business, other entity, or individual sending the message and the telephone number of the sending machine or of such business, other entity, or individual. If a facsimile broadcaster demonstrates a high degree of involvement in the sender's facsimile messages, such as supplying the numbers to which a message is sent, that broadcaster's name, under which it is registered to conduct business with the State Corporation Commission (or comparable regulatory authority), must be identified on the facsimile, along with the sender's name. Telephone facsimile machines manufactured on and after December 20, 1992, must clearly mark such identifying information on each transmitted page.

47 C.F.R. § 68.318(d).

Although no independent cause of action exists for violations of § 227(d), *see Lary v. Flasch*

*Bus. Consulting*, 878 So. 2d 1158, 1165 (Ala. Civ. App. 2003) ("Congress did not authorize private citizens to bring actions to impose penalties for or recover damages allegedly flowing from violations of subsection (d) of that statute."); *see also Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649, 652 n.2 (8th Cir. 2003) (noting district court's dismissal of § 227(d) claims); *Condon v. Office Depot, Inc.*, 855 So. 2d 644, 645 n.1 (Fla. Dist. Ct. App. 2003) (noting trial court's holding that § 227(d) did not allow private right of action), plaintiffs instead allege violations under § 68.318(d). Whether plaintiffs are entitled to bring claims for violations of regulations implemented under § 68.318(d) is an issue of first impression in this district.

Defendant argues that § 68.318(d) was promulgated under § 227(d), and, therefore, does not permit a private cause of action for technical violations. Plaintiffs contend the regulation was issued under § 227(b), and is, therefore, actionable. Defendant believes that a mere citation to § 227(d)(1)(B) in the Final Rule, *see* 68 F.R. 44144, provides sufficient basis for finding the regulation was promulgated under the authority of that subsection.[3] The Final Rule, in the same paragraph that defendant cites, states that the purpose behind the identification regulations is to "permit consumers to hold fax broadcasters accountable for unlawful fax advertisements when there is a high degree of involvement on the part of the fax broadcaster." *Id.* Section 68.318(d), by requiring faxes to contain certain identifying information, better enables consumers to identify the proper parties against whom private rights of action under the TCPA should be brought. But it does not, as plaintiffs contend,

---

[3] *See Adler v. Vision Lab Telecomms., Inc.*, No. CIV.A.05-0003, 2005 WL 2621984, at *2 (D.D.C. Oct. 17, 2005) ("The regulations cited by plaintiffs, however, were issued pursuant to a directive in § 227(d)."); *see also Saporito III*, slip op. at 4-5 ("[I]t is clear from the language of § 227(d) that the FCC must have relied on § 227(d) when promulgating 47 C.F.R. § 68.318(d)."). We do not find that the citation in the Final Rule carries the same weight as these courts. Nevertheless, we arrive at the same conclusion through different reasoning.

make it "absolutely clear that the regulation must have been promulgated pursuant to . . . § 227(b)."[4] (Pls. Mem. Opp. Mot. Dismiss at 4-5.) This Court cannot understand how language governing technical fax requirements in § 227(d), a section that contains no language permitting a private right of action, suddenly bestows a private right of action when it is redrafted into an F.C.C. regulation that fails explicitly to identify the subsection under whose authority it was promulgated.[5]

The TCPA empowered citizens to sue for relief from the problem created by the *receipt* of unsolicited fax advertisements, not for deficiencies in the faxes received. *See Adler*, 2005 WL 2621984, at *2. The TCPA provides for injunctive and compensatory relief in order to stop and/or compensate the plaintiff for the annoyance, the conversion of paper and ink and the effective preemption of his fax machine during the intervals when it is receiving advertisement transmissions. *See Kim v. Sussman*, No. 03 CH 07663, 2004 WL 3135348, at *1 (Ill. App. Ct. Oct. 14, 2004) ("The TCPA . . . was intended to address the nuisance posed to individuals and businesses by the receipt of unsolicited fax transmissions."); *see also* H.R. Report No. 317, 102d Cong, 1st Sess., at 10 ("The fax advertiser takes advantage of this basic design by sending advertisements to available fax numbers, knowing that it will be received and printed by the recipient's machine. This type of

---

[4] Nor is plaintiffs' argument that § 68.318(d) falls under § 227(b) because the F.C.C. had authority to make regulations and cited § 227 in its entirety as authority for so making this regulation a convincing one. (Pls. Mem. Opp. Mot. Dismiss at 6-8.) Defendant does not challenge the F.C.C.'s authority to make this, or any, regulation in furtherance of the TCPA. Rather, defendant challenges the ability of plaintiffs to bring a private right of action under the regulations.

[5] Equally as curious is why plaintiffs also have not alleged a violation of the last sentence of § 68.318(d) for failure of a fax machine manufactured after December 20, 1992, to supply identifying information on each transmittal page. Plaintiffs' reasoning appears to lead to the conclusion that plaintiffs are entitled to the statutory remedy of $500 for each page on which a post-1992 fax machine failed to print the required information, since this requirement would also aid identification of the sender.

telemarketing is problematic for two reasons. First, it shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax."). True, the technical and procedural standards are designed to make it easier to identify the offending sender. However, under the TCPA, it is the province of the state attorneys general and the F.C.C. to sue fax broadcasters for technical violations. *See* 47 U.S.C. § 227(f)(1), (7); 47 U.S.C. § 503(b)(1), (5). It is not the province of the court to add private rights of action not clearly authorized by Congress. *See Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) (stating "private rights of action to enforce federal law must be created by Congress" and in the absence of statutory intent to create a private right and remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute"). Nothing in the legislative history indicates an intent on the part of Congress to turn each annoyed fax recipient into an individual F.C.C. enforcer. Nor would such a result, even if intended, likely put a stop to faxed advertisements; the advertising transmissions would merely be a few lines longer.[6] We are not persuaded by plaintiffs' claim that "there is a growing consensus among courts from different states that violations of the identification requirements under § 68.318(d) are actionable under 47 U.S.C. § 227(b)." (Pls. Mem. Opp. Mot. Dismiss at 10 (citing *Schraut v. Rocky Mtn. Reclamation*, 2001 TCPA Rep. 1182 (Mo. Cir. Dec. 18, 2001) (Bellin Decl., Ex. A); *Sterling Realty Co. v. Klein*, 2005 TCPA Rep. 1353 (N.J. Super. Mar. 21, 2005) (Bellin Decl., Ex. B); *McKenna v. Accurate Comp. Servs., Inc.*, 2002 TCPA Rep. 1135 (Colo. Dist. Feb. 24, 2003) (Bellin Decl., Ex. C).) Nor do we

---

[6] Under 47 C.F.R. § 1.80(b)(3), the F.C.C. can impose penalties of $11,000 for regulation violations, compared to the $500 plaintiffs assert that they can claim.

find convincing the justification, if any, that these cases provide. Allowing separate recovery for each and every technical violation alleged would create a windfall for plaintiffs clearly not in the contemplation of Congress. As Senator Hollings, the bill's sponsor, stated, "Small claims court or a similar court would allow the consumer to appear before the court without an attorney. *The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer.*" 137 Cong. Rec. S16205 (Nov. 7, 1991) (emphasis added).

Accordingly, defendant's motion to dismiss is granted with respect to plaintiffs' claims under 47 U.S.C. § 68.318(d).[7]

## B.    New York State Anti-Fax Law

Federal law can preempt state law with an express statement from Congress, without an express statement when the federal statute implies an intention to preempt state law or when state law directly conflicts with federal law. *See N.Y. Conference of Blue Cross v. Travelers Ins.*, 514 U.S. 645, 654 (1995); *Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 641 (2d Cir. 2005). Courts addressing claims of preemption start from the presumption that Congress does not intend to supplant state law. *See N.Y. Conference*, 514 U.S. at 654. "Congress' intent . . . primarily is discerned from the language of the pre-emption statute and the 'statutory framework' surrounding it." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996) (citing *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 111 (1992)). This includes the "'structure and purpose of the statute as a whole,' as revealed not only in the text, but through the reviewing court's reasoned understanding of the way

---

[7] Dismissal of the § 68.318(d) claims reduces the amount of damages potentially recoverable, but not below the $75,000 amount in controversy requirement under § 1332.

in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Id.* (quoting *Gade*, 505 U.S. at 98).

Section 227(e)(1) of the TCPA states:

> [N]othing in this section or the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits —
>> (A) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements . . . .

Defendant asserts that the TCPA preempts N.Y. GEN. BUS. LAW § 396-aa because the New York State statute cannot apply to the regulation of *interstate* fax transmissions.[8] (Def. Mem. Supp. Mot. Dismiss at 8.) Plaintiffs contend that the state statute applies to both interstate and intrastate faxes. Therefore, this Court must decide whether plaintiffs' claims based on interstate faxes are permissible under N.Y. GEN. BUS. LAW § 396-aa.[9]

---

[8] Neither plaintiffs' Complaint nor their briefing papers allege that defendant sent any intrastate faxes.

[9] The text of N.Y. GEN. BUS. LAW § 396-aa reads:

1. It shall be unlawful for a person, corporation, partnership or association to initiate the unsolicited transmission of telefacsimile messages promoting goods or services for purchase by the recipient of such messages. For purposes of this section, "telefacsimile" shall mean every process in which electronic signals are transmitted by telephone lines for conversion into written text. This section shall not apply to telefacsimile messages sent to a recipient with whom the initiator has had a prior contractual or business relationship nor shall it apply to transmissions not exceeding five pages received between the hours of 9:00 P.M. and 6:00 A.M. local time. Notwithstanding the above, it shall be unlawful to initiate any telefacsimile message to a recipient who has previously sent a written or telefacsimile message to the initiator clearly indicating that the recipient does not want to receive telefacsimile messages from the initiator.

2. Any person who has received a telefacsimile transmission in violation of this section may bring an action in his own name to recover his actual damages or one hundred dollars, whichever is greater.

While "Congress authorized the states to adopt legislation containing '*more restrictive intrastate* requirements or regulations,' . . . nothing in the TCPA purports to authorize the states to adopt *less restrictive* regulations governing *interstate* commerce." *Consumer Crusade, Inc. v. Affordable Health Care Solutions, Inc.*, No. 04CA1839, 2005 WL 2046057, at *7 (Colo. Ct. App. Aug. 25, 2005) (Criswell, J., concurring) (emphasis in original). The legislative history of the TCPA illustrates that Congress recognized the need to restrict interstate communications because the states lacked jurisdiction to do so. Congress found that "[o]ver half the states now have statutes restricting various uses of the telephone for marketing, but telemarketers can evade their prohibitions through interstate operations; therefore, federal law is needed to control residential telemarketing practices." Pub. L. No. 102-243 § 2(7), 105 Stat. 2394 (1991); *see also* Sen. R. No. 102-178 at 3 (1991) ("States do not have jurisdiction over the interstate calls. Many states have expressed a desire for federal legislation to regulate interstate telemarketing calls to supplement their restrictions on intrastate calls"); Sen. R. No. 102-178 at 5 ("Federal action is necessary because states do not have the jurisdiction to protect their citizens against those who use these machines to place interstate telephone calls"). "Courts recognize that Congress enacted the TCPA to supplement similar state legislation to protect the privacy interests of residential phone subscribers against unwanted interstate phone and facsimile solicitations '*because states do not have jurisdiction over interstate calls*.'" *Gottlieb*, 367 F. Supp. 2d at 310 (quoting *Foxhall*, 156 F.3d at 437) (emphasis in original) (collecting cases).

While plaintiffs correctly observe that § 396-aa does not expressly preclude its applicability to interstate faxes, (Pls. Mem. Opp. Mot. Dismiss at 19-20), this Court is persuaded to follow Judge

Glasser's opinion in *Gottlieb*, which held that § 396-aa applies only to intrastate communications "in view of Congress's intent that the TCPA extend the reach of state laws by regulating interstate communications." *Gottlieb*, 367 F. Supp. 2d at 311. Therefore, defendant's motion to dismiss plaintiffs' claims under § 396-aa is granted; plaintiffs have failed to state a claim upon which relief can be granted under New York law because the Complaint fails to allege that defendant, a Florida corporation with its principal place of business in Miami Beach, Florida, sent plaintiffs any intrastate faxes.

### C.     <u>Attorney's Fees</u>

Defendant's motion to dismiss plaintiffs' claim for attorney's fees is also granted. Defendant rightly notes that absent explicit congressional authorization, attorney's fees are generally not recoverable. *See*, *e.g.*, *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1997). The TCPA makes no provision for attorney's fees or costs. *See J.C. Corp. Mgmt., Inc. v. Resource Bank*, No. 4:05CV00716, 2005 WL 2206096, at *4 (E.D. Mo. Sept. 12, 2005); *Gold Seal*, 2003 WL 21508177, at *4. The relatively few state cases that have permitted recovery of attorney's fees did so pursuant to specific authorizations in state statutes, authorizations that are not contained in the New York State statute—which, as noted above, is inapplicable to this case in any event. *See Jemiola v. XYZ Corp.*, 802 N.E.2d 745, 750 (Ohio Ct. Cl. 2003). Consequently, plaintiffs are not entitled to seek attorney's fees.

**CONCLUSION**

For all of the foregoing reasons, plaintiffs' motion to remand is denied and defendant's motion to dismiss certain of plaintiffs' claims is granted, thereby dismissing plaintiffs' claims for: (1) Telephone Consumer Protection Act ("TCPA") violations of 47 C.F.R. § 68.318(d), set forth in the Complaint at paragraph 38(2)-(4); (2) N.Y. GEN. BUS. LAW § 396-aa violations, set forth in the Complaint at paragraphs 36, 42-44 and 50-52; and (3) attorney's fees. In addition, plaintiffs' request for interlocutory appeal is granted. The case is stayed, excepting discovery, until the Court of Appeals for the Second Circuit renders a decision on the federal district courts' subject matter jurisdiction over TCPA claims.

SO ORDERED.

Dated: White Plains, New York
      November 18, 2005

_William C. Conner_
Sr. United States District Judge
